IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

JOHN C. DISTEFANO and
goDESK, LLC,

       Plaintiffs,                                OPINION and ORDER

       v.                                       23-cv-657-wmc

NORDIC CONSULTING PARTNERS, INC.,

       Defendant.
_____

This case arises out of a dispute over the development and subsequent marketing of a healthcare software platform known as the "Wellward Platform." Specifically, plaintiffs John Distefano and his solely-owned entity, goDesk, LLC, claim that Distefano had the original idea for a consumer-centric healthcare software platform, and that he retained ownership and control of that platform, even as they worked with defendant Nordic Consulting Partners in the coding and creation of it. In contrast, defendant Nordic maintains that its personnel created the Wellward Platform under several, written agreements with plaintiffs, so which Nordic owns the platform and associated intellectual property rights.

Plaintiffs originally filed this lawsuit in the Middle District of Florida, but that court transferred the case here after Nordic moved to enforce a forum selection and/or arbitration clause. Post transfer, plaintiffs filed an amended complaint (dkt. #47), to which Nordic responded by filing a motion to compel arbitration or, in the alternative, to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failing to allege sufficient

1

facts to support their claims.  (Dkt. #50.)  Plaintiffs both oppose that motion *and* also filed a motion for leave to file a second amended complaint.  (Dkt. #57.)

For the reasons below, the court will deny all the pending motions.  First, the Florida district court rejected Nordic's request to compel arbitration before transfer (dkt. #34), so that motion will be denied as the law of the case even with the additional allegations in the amended complaint.  Second, Nordic's motion to dismiss will be denied because plaintiffs' allegations are sufficient to satisfy the pleading requirements of Rules 8 and 12(b)(6).  Finally, the court will deny plaintiffs' motion to file a second amended complaint because the proposed changes are unjustified or unnecessary.

## ALLEGATIONS OF FACT[1]

### A.  Background

Plaintiff Distefano is a healthcare consultant and the owner and sole member of plaintiff goDesk, LLC, which provides health technology consulting services.  In 2019, Distefano began working on the Wellward Platform, a healthcare software platform that he later copyrighted.

In February 2020, James Costanzo, the chief executive officer of defendant Nordic Consulting Partners, Inc., recruited Distefano to help grow its consultancy and advisory services division.  Over the next several months, Costanzo discussed with Distefano the possibility of retaining his services.  During those discussions, Distefano told Costanzo

---

[1] The following allegations are drawn from plaintiffs' amended complaint (dkt. #47) and are accepted as true for purposes of resolving the parties' pending motions.

about his Wellward Platform, and they eventually agreed that Nordic would partner with Distefano in creating and monetizing it, as well as subcontracting with goDesk to grow Nordic's consultancy and advisory services.   The parties' general concept involved Distefano: (1) consulting for Nordic via goDesk; and (2) leading Nordic's software engineers to develop additional software code that would become a fully functioning "Wellward" platform.   According to plaintiffs at least, Costanzo acknowledged in the process "that Mr. Distefano was, and would always be, the owner of the software platform along with other related materials and that Nordic would simply be a partner in monetizing" the platform.  (Am. Com. (dkt. #47) ¶ 6).

### B.  Reducing Parties' Business Relationship to Writing

Over the course of their business relationship, the parties entered into four different, written agreements governing plaintiffs Distefano's and goDesk's work with defendant Nordic: (1) the Subcontractor Master Services Agreement, dated May 18, 2020 (the "MSA"); (2) the First Statement of Work, dated May 9, 2020 (the "First SOW"); (3) the Employment Agreement, dated December 1, 2021; and (4) the Second Statement of Work, dated August 22, 2022 (the "Second SOW").  The First and Second SOWs, as well as the MSA, were expressly executed by Distefano *as a representative of goDesk, LLC*.  In contrast, the Employment Agreement was executed by Distefano in his personal capacity.

According to Distefano, the MSA, First SOW and Employment Agreement addressed only goDesk's and Distefano's consulting work for Nordic and did not deal with Wellward at all; rather, a separate *oral* agreement with Costanzo addressed the work on Wellward, which the parties later formalized in the Second SOW to complete their joint

3

work on Wellward.  That oral agreement allegedly contemplated:  Distefano controlling Nordic software programmers and directing overall development of the body of software code; and the formation by Nordic and Distefano of "a jointly owned company that would monetize" its value.  The *written* agreements are summarized as follows:

### 1.  MSA and First SOW

The MSA between goDesk, LLC and Nordic contained a provision assigning the exclusive intellectual property rights to Nordic for "any ideas, concepts, techniques, inventions, processes or works of authorship developed or created by [goDesk, LLC] or its personnel in connection with the performance or the Services under this Agreement[.]" (Dkt. #47-2, § III.2.B.)  The MSA also contains a merger clause, stating:

> **Entire Agreement.** This Agreement . . . and any Statements of Work set forth the full and complete agreement of the Parties with respect to the subject matter hereof. All prior agreements, correspondence, discussions and understandings of the Parties (whether oral or written) are merged herein and superseded hereby, it being the intention of the Parties that this Agreement shall serve as the complete and exclusive statement of the terms of their agreement together.

(*Id.*)

The First SOW, dated nine days earlier, included a detailed description of services that were to be provided by goDesk to Nordic, including leadership and expertise, with Distefano expressly listed as "personnel" of goDesk.  Moreover, the First SOW also stated that it was "a supplement" of the soon to be executed MSA.

However, the Wellward Platform is not specifically mentioned in either the MSA or First SOW, despite Distefano directing Nordic software programmers for several months

4

in the development of the Wellward Platform and maintaining overall control of the code for the platform.

### 2. Employment Agreement

The First SOW ended on or about November 30, 2021, consistent with Distefano transitioning to a full-time employee of Nordic on or about December 1, 2021. As part of this transition, Distefano and Nordic executed the Employment Agreement governing Distefano's employment by Nordic from December 1, 2021, through August 2022. Under the terms of their agreement, Distefano agreed to "devote all of [his] business time and best efforts, business judgment, skill and knowledge exclusively to the advancement of the Business and to discharge of [his] duties and responsibilities hereunder." (Dkt. #47-4 at § 3(b).)

The Employment Agreement also contained a provision governing ownership of any intellectual property created or developed during Distefano's employment with Nordic. Specifically, the agreement grants "exclusive ownership" to Nordic of any intellectual property created or developed by Distefano during his employment with Nordic or using Nordic's resources. (*See* dkt. #47-4, § 7(a).) The Employment Agreement contained several other clauses, including an arbitration provision that required "any legal or equitable claim or controversy arising out of or relating to this Agreement … shall be settled exclusively by binding arbitration." (*Id.* at 14.) Like the MSA that preceded it, the Employment Agreement contained a merger clause, stating that it "constitutes the sole understanding of the parties with respect to the matters provided for herein and supersedes

all prior and contemporaneous oral and written agreements and understandings between the parties with respect to the subject matter of this Agreement." (*Id.* at 15).

Just three months after the effective date of the Employment Agreement, February 21, 2022, however, Distefano notified Nordic that he intended to resign his position as employee, with an effective termination date of August 21, 2021.  Between February and August, Distefano and Costanzo proceeded to meet and discuss the Wellward Platform on several occasions.   During these discussions, Costanzo allegedly continued to assure Distefano that they were going to create a company around the platform and that Distefano would retain ownership of it.   Based on this reassurance, Distefano even conducted various investor meetings for the new company.

### 3.  The Second Statement of Work

When Distefano's employment ended in August 2022, goDesk executed a Second SOW with Nordic, which was to be effective August 22, 2022, to December 31, 2022. The Second SOW states that it "is a supplement to the Subcontract Master Services Agreement by and between Nordic and Subcontractor [goDesk] dated as of May 18, 2020."  The Second SOW focused on the Wellward Platform, with goDesk providing "consulting services related to the platform development and commercialization efforts of the Wellward platform." (Dkt. #47-6, at 2).  According to Distefano, Constanzo assured him that the Second SOW would not change their previous agreement regarding Wellward specifically, Constanzo allegedly acknowledged that Distefano would continue to own the Wellward Platform and any ownership would only transfer to a newly-formed, joint entity once the development of the platform was completed.

6

In January 2023, Constanzo told Distefano that Nordic planned to stop investing in Wellward's development and begin focusing on its marketing. Costanzo also proposed Distefano remain "involved from a sales perspective," with possible, commission-based compensation. Ultimately, however, Nordic did not extend Distefano's contract or employment relationship.

Finally, when Distefano proposed taking Wellward to a third party for further development and marketing, Nordic's in-house counsel objected, maintaining that Distefano could only "pursue the idea/concept of a digital platform subject to confidentiality and other obligations (e.g., not using Nordic's IP) [as] outlined in [Distefano's] agreements with Nordic." (Dkt. #1, at 10; dkt. #47, at 29.)

### C. Litigation History

Distefano filed a complaint against Nordic on February 15, 2023, in the Middle District of Florida, alleging three claims: (1) breach of oral contract; (2) breach of implied contract; and (3) quantum meruit. (Dkt. #1.) The gist of his claims was that he, not Nordic, owns the Wellward Platform. Nordic filed a motion to either: dismiss the case for lack of personal jurisdiction; enforce the forum selection clause in the MSA and transfer the case to the Western District of Wisconsin; or compel arbitration under the Employment Agreement. (Dkt. #16). Distefano opposed the motion to transfer, arguing that he was suing on behalf of himself, not goDesk, and only goDesk was a party to the MSA. Additionally, he argued that neither the MSA nor the Employment Agreement applied to the dispute because (1) Wellward was not developed during Distefano's

employment with Nordic, and (2) the development and commercialization of Wellward was subject to an oral, not a written, agreement.  Finally, he argued that the dispute was not subject to arbitration because even if the Employment Agreement was otherwise applicable, the arbitration clause excluded intellectual property claims.

The U.S. District Court for the Middle District of Florida granted the motion in part, transferring the case to this court under the forum selection clause of the MSA.  (M.D. Fl. Order (dkt. #34).)  In particular, the court held reasoned that even though plaintiff Distefano did not sign the MSA or either SOW in his personal capacity, his claims were subject to the MSA's forum selection clause because goDesk and he were "extremely closely-related," plus he personally signed the MSA on behalf of goDesk.  (*Id.* at 12.)  In addition, the court found the MSA expressly governed both the First and subsequent SOWs, which meant that when the parties signed the most recent written agreement (the Second SOW), it was subject to the MSA's provisions addressing ownership of intellectual property, and importantly, the provision stating that the MSA *superseded* all prior agreements.  (Dkt. #34, at 9.)  Thus, the court concluded that when the Second SOW and MSA were considered together, their terms superseded the arbitration provision in the earlier Employment Agreement.

After transfer, plaintiffs filed an amended complaint adding goDesk LLC as a plaintiff and asserting eight claims for relief: breach of oral contract (count I); breach of implied contract (count II); unjust enrichment (count III); declaration of copyright interests (count IV); breach of written employment agreement (count V); breach of written master services agreement (count VII); and intentional misrepresentation (counts IV,

VIII).  (Dkt. #47.)  Nordic responded by filing a motion to compel arbitration or dismiss for failure to state a claim.  (Dkt. #50).  In its motion, Nordic argues that arbitration of all claims is mandatory because plaintiffs' amended complaint contains a claim for breach of the Employment Agreement itself, which requires arbitration.  Alternatively, Nordic argues that the court should dismiss the entire First Amended Complaint for failure to state a claim under Rule 12(b)(6).  That motion is now fully briefed.

In January 2024, however, plaintiffs retained new counsel, who informed the court that plaintiffs would seek leave to file a second amended complaint (dkt. #56), and the following month, plaintiffs filed a formal motion for leave to file a second amended complaint, which is some 50 pages in length and seeks to remove claims for breach of the Employment Agreement (admittedly to avoid arbitration), names Nordic's CEO James Costanzo as a defendant, and add new allegations and claims against both Nordic and Constanzo.  (Dkt. #57-1.)  Defendant Nordic opposed the motion, arguing that it comes too late, is intended to delay these proceedings, and would be both prejudicial and futile. (Dkt. #62.)

OPINION

The court will address the parties' pending motions in the following order:  (1) defendant's motion to compel arbitration;  (2) defendant's motion to dismiss the first amended complaint;  and  (3) plaintiffs' motion for leave to file a second amended complaint.

I.      **Motion to Compel Arbitration**

As it did in the Middle District of Florida, defendant again moves to compel arbitration of all plaintiffs' claims, arguing that the broad arbitration provision in the Employment Agreement necessarily encompasses all claims brought by Distefano and goDesk.  Moreover, to the extent the Arbitration Provision is controlling, then defendant maintains that "the question of arbitrability should be decided by the arbitrator," not by a court.

However, the Florida district court has decided this question already, and under the "law of the case" doctrine, it is

> a matter of sound policy and practice [that] the same 'court should not revisit its earlier rulings unless there is a compelling reason to do so.  It is designed to further consistency, to avoid constantly revisiting rulings, and to conserve judicial resources.

*Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 510 (7th Cir. 2009) (citations omitted).  Accordingly, "the practice of courts generally [is] to refuse to reopen what has been decided."  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (citations omitted).  Further, while a court "has the power to revisit prior decisions of its own or of a coordinate court in any circumstance," the Supreme Court cautions it "should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'"  *Id.* (citations omitted).  As noted, in the Court's ruling, that doctrine "applies as much to the decisions of a coordinate court in the same case as to a court's own decisions," and applies especially to those decisions involving transfer because courts don't want to "send litigants into a vicious circle of litigation."  *Id.* at 816; *see also In re Mathias*, 867 F.3d 727, 730 (7th Cir.

2017) (same); *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (law of the case doctrine helps avoid "perpetual litigation by playing jurisdictional ping-pong"). Generally, therefore, since the enforceability of the arbitration clause has already been litigated by the parties, the law of the case doctrine "should be the end of the matter." *Creek v. Village of Westhaven*, 144 F.3d 441, 445 (7th Cir. 1998).

In fairness, defendant acknowledges that the Florida district court already considered and denied defendant's motion to refer this lawsuit to arbitration, holding "that the MSA's forum selection clause applied because the MSA and Second SOW superseded all prior agreements, including the Employment Agreement."  (Dft.'s Br. (dkt. #54) 2.) Defendant does not deny that the "law of the case" doctrine would apply if this court was considering the same pleading that plaintiff filed in the Florida court.  Nevertheless, defendant argues that this court should compel arbitration because circumstances have changed: *plaintiffs* now allege in their amended complaint "that the Second SOW was fraudulently induced" (*id.*), and thus, "if plaintiffs proceed on their fraud claims," the forum selection clause of the MSA and Second SOW "may no longer supersede the Arbitration Provision in the Employment Agreement."  (*Id.*)

However, the "law of the case" doctrine applies regardless whether plaintiffs' amended complaint now purports to include a new claim under the Employment Agreement or a challenge to the validity of the Second SOW.  First, the Florida court's decision found that the MSAs forum selection clause controlled, despite plaintiff not raising any claims under the MSA or Employment Agreement in his complaint.  That plaintiffs now raise claims under both does not undermine the Florida court's reasoning.

11

Second, when discussing the validity and enforcement of forum-selection clauses more broadly, the Seventh Circuit has expressly rejected the notion that "a plaintiff can defeat a forum-selection clause by its choice of provisions to sue on, of legal theories to press, and of defendants to name in the suit." *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 888 (7th Cir. 2004); *see also Williams v. MJC Acquisition, LLC*, No. 1:20-CV-68 DRL-SLC, 2020 WL 3411178, at *3 (N.D. Ind. June 22, 2020) (plaintiff's argument that forum selection clause did not apply because her claims relied on federal and state statutes, not her employment contract, was "hogwash").   Likewise, alleging that a contract containing a forum selection clause was induced by fraud does *not* invalidate an otherwise valid forum selection clause. *Am. Patriot Ins. Agency, Inc.*, 364 F.3d at 889.   Thus, plaintiffs' new breach of contract and fraud claims would not alter the Florida court's previous conclusion that all plaintiffs' claims relate to the four written agreements and thus, are subject to the most recent agreement's forum selection clause.

In sum, while plaintiffs have expanded their claims to include several new legal theories, their underlying allegations remain the same, and defendant has failed to show that this is one of the "extraordinary circumstances" warranting this court to reconsider and reverse the U.S. District Court for the Middle District of Florida's previous opinion and order that the forum selection clause of the MSA controls.   Therefore, defendant's motion to compel arbitration must be denied.

## II.     Failure to State a Claim

As an alternative to compelling arbitration of the parties' dispute, defendant argues that all of plaintiffs' claims should be dismissed for failure to state a claim upon which relief may be granted.  At the pleading stage, however, the question is merely whether plaintiffs' allegations provide enough context to state a plausible claim or, stated another way, whether the allegations both give notice to defendant regarding what it is accused of doing and allow the court to draw a reasonable inference that defendant is liable for the alleged misconduct.  *McCray v. Wilkie*, 966 F.3d 616, 620 (7th Cir. 2020); *Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 356 (7th Cir. 2020).

Here, defendant argues that plaintiffs' claims fail for several reasons.  *First*, defendant contends that *all* of plaintiffs' claims fail because the written agreements state Nordic owns the intellectual property at issue.  Specifically, the MSA states:

> **Contract Property.** Except as provided . . . below, all copyrights, patents, trade secrets or other intellectual property rights associated with any ideas, concepts, techniques, inventions, processes or works of authorship developed or created by [goDesk, LLC] or its personnel in connection with the performance or the Services under this Agreement (collectively, "Contract Property") shall belong exclusively to Nordic and shall, to the extent applicable, be considered "work made for hire[.]

(Dkt. #47-2, § III.2.B.)  The MSA further provides that "[i]f any element or item of the Contract Property is not a 'work made for hire,'" goDesk "will assign, and shall cause its personnel [Distefano] to assign to Nordic, without any requirement or further consideration, any right, title or interest that Subcontractor and its personnel may have in such Contract Property."  (*Id.*)  Similarly, the Employment Agreement states:

> If the Employee creates, invents, designs, develops, contributes to or improves any works of authorship, inventions, intellectual property, materials, documents or other work product (including without limitation, research, reports, software, databases, systems, applications, presentations, textual works, content, or audiovisual materials), either alone or with third parties, at any time during the Employee's employment by the Company and within the scope of such employment and/or with the use of any Company resources ("Company Works"), the Employee shall promptly and fully disclose same to the Company and hereby irrevocably assigns, transfers and conveys, to the maximum extent permitted by applicable law, all rights and intellectual property rights therein (including rights under patent, industrial property, copyright, trademark, trade secret, unfair competition and related laws) to the Company to the extent ownership of any such rights does not vest originally in the Company.

(Dkt. #47-4, § 7(a).)

Based on these express grants of exclusive rights to all intellectually property that plaintiffs created while working *for or with* Nordic and Nordic personnel, defendant argues plaintiffs relinquished all rights to ownership of the Wellward Platform under any viable legal theories.  In response, plaintiffs argue that: (1) neither the MSA and First SOW, nor even the Employment Agreement, apply to plaintiff *Distefano's* work on the Wellward Platform; *and* (2) Distefano was assured that the Second SOW, which post-dated most of his development of Wellward, would *not* override his previous, oral agreement with Costanzo.  In particular, plaintiffs point out that neither the MSA nor the First SOW mention the Wellward Platform at all, but instead address consulting work that plaintiff *goDesk* would perform for Nordic.  As for the Employment Agreement, Distefano points to language that he claims to have successfully negotiated be added to the agreement with the specific purpose of protecting his past work on the Wellward Platform.

14

> Notwithstanding the foregoing, the definition of Company
> Works does not include any works of authorship, inventions,
> intellectual property, materials, documents or other work
> product developed (alone or jointly) by the Employee (i)
> entirely on the Employee's own time and (ii) any concepts,
> materials, ideas, or other intellectual property previously
> developed by Employee.

(*Id.*)  Moreover, both sides agree that this language expressly excluded from "Company Works" any intellectual property that Distefano developed (i) entirely on his own time *or* (ii) before working with Nordic.

Of course, plaintiffs' reliance on language from an Employment Agreement that they claim was not operative after the parties' adoption of the Second SOW, the court cannot resolve at the pleading stage whether plaintiffs' work for Nordic under the First SOW or Employment Agreement encompassed development of the Wellward Platform.  According to plaintiffs, the work goDesk performed under the First SOW, and Distefano performed as an employee, was entirely separate from work on the Wellward Platform.  Although defendant disagrees, resolution of this issue requires consideration of evidence outside the pleadings about the status of the Wellward Platform before Distefano began working with Nordic, the specific type of work that was performed by plaintiffs for Nordic, the arrangement under which Nordic personnel worked on Wellward, and other contextual evidence such as communications or compensation for plaintiffs' and Nordic personnel's work on various projects.  The language of the written agreements, by themselves, does not resolve this dispute.

*Second*, defendant contends that any Wellward intellectual property created after Distefano entered the Employment Agreement was necessarily owned by Nordic because

the Employment Agreement required Distefano to "devote all his business time and best efforts, business judgment, skill and knowledge exclusively to the advancement of the Business and to the discharge of [his] duties and responsibilities hereunder." (Dkt. 47-4, Employment Agreement, § 3(b).)

In contrast, plaintiffs rely on an exception in § 3(b) for "passive personal investments," and certain other "social, philanthropic, or outside business activities," *though only to the extent* that such activities do not violate Section 7 of the Employment Agreement (the intellectual property provision). (*Id.*) Defendant argues that Distefano's work on the Wellward Platform during his employment did not fall within the exception to "company works." Again, however, the court cannot resolve this dispute based on the pleadings alone. Indeed, it is not even clear on the pleadings how much of the Wellward Platform was developed before the MSA, First SOW or outside Distefano's employment by Nordic that would qualify under the exception. Neither the pleadings nor the written agreements can resolve this question.

For the same reasons, the court cannot resolve defendant's argument that plaintiffs cannot succeed on their copyright claims because they admit in the amended complaint that Nordic engineers, not Distefano, created the code for the Wellward Platform. *See, e.g. Woods v. Resnick*, 725 F. Supp. 2d 809, 819-22 (W.D. Wis. 2010) (holding the defendant could not establish joint authorship of a copyrighted source code where the defendant failed to translate his ideas into a fixed medium, but merely provided ideas for the source code, excel spreadsheets, and mock-ups of reports and screen displays). The *Woods* case,

on which defendant relies, was decided on cross-motions for summary judgment, after the court could review relevant evidence on the matter.

*Third*, defendant contends that because the MSA and Employment Agreement included merger provisions stating that they represent "the full and complete agreement of the Parties" and supersede all other agreements, plaintiffs' claims based on prior oral or implied agreements or understandings fail.[2]   In response, plaintiffs argue that these integration clauses are directed only to the "subject matter of the [MSA] and any Statements of Work," which at the time of the First SOW did *not* include the Wellward Platform.   Again, the court cannot resolve this issue at the pleading stage given the parties' disputes about the scope of the MSA, First SOW, and Employment Agreement.   Rather, the court needs more information, including with regard to plaintiffs' assertion that the written agreements themselves were the result of defendant's intentional misrepresentations.   Even the cases cited by defendant in support of their arguments based on the enforceability of a merger clause had advanced well beyond the pleading stage.   *See Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 472 (7th Cir. 2009) (decided after a bench trial); *Anheuser-Busch, Inc., v. Teamsters Local Union*, 280 F.3d 1133, 1134 (7th Cir. 2002) (review of arbitration decision).

---

[2] Defendant argues the Florida court already rejected plaintiffs' claim that Distefano had an oral contract with defendant, but defendant is incorrect.  The Florida court stated that the development and commercialization of Wellward could not have been "governed *only* by an oral agreement," considering the language in the Second SOW.  (Dkt. #34, at 13.)  But the Florida court did not reject, or even address, the question whether an oral contract might exist at all.  Rather, the Florida court decided only whether Distefano was bound by the forum selection clause in the MSA.

*Fourth*, defendants contend that plaintiffs' allegations regarding an oral or implied contract are too vague and indefinite to support an inference that such a contract existed. The court disagrees.  To be enforceable, an oral contract merely requires a meeting of the minds between the parties with respect to the essential terms of the agreement, their intent to be bound by those terms and consideration.  *See Larimer v. Dayton Hudson Corp.*, 137 F.3d 497, 502 (7th Cir. 1998) (citing *Witt v. Realist, Inc.*, 18 Wis.2d 282, 297, 118 N.W. 85, 93 (Wis. 1962)).  While the material terms must be "definite and certain" to be enforceable, *Herder Hallmark Consultants, Inc. v. Regnier Consulting Group, Inc.*, 2004 WI App 134, ¶ 8, 275 Wis.2d 349, 685 N.W.2d 564, plaintiffs allege here that defendant (through its CEO Costanzo) agreed plaintiffs could use Nordic personnel to code the Wellward Platform in exchange for plaintiffs commitment to form a jointly owned venture with defendant to monetize that platform.   Plaintiffs further allege that the parties' oral agreement was confirmed through written correspondence between the parties and others, telephone conversations, numerous in-person and virtual meetings, performance under the agreement, the parties' subsequent course of conduct, and a proposed "operating agreement."  At the pleading stage, these allegations are sufficient to suggest that an oral or implied contract existed.[3]

---

[3] Defendant also argues that plaintiffs' oral and implied contract claims are barred by the Wisconsin statute of frauds, under which "[e]very agreement that by its terms is not to be performed within one year from the making thereof" is void "unless such agreement or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party charged therewith." Wis. Stat. § 241.02(1)(a).  First, the statute of frauds is an affirmative defense, which means that it should be raised in a motion for judgment on the pleadings or motion for summary judgment, not in a motion to dismiss on plaintiff's pleading alone.  *See Yassan v. J.P. Morgan Chase and Co.*, 708 F.3d 963, 975–76 (7th Cir. 2013); *Hine v. Vilter*, 88 Wis. 2d 645, 650, 277 N.W.2d 772, 775 (1979). And there are exceptions to the statute of frauds, which defendants don't address.  So the

*Fifth*, defendant contends that plaintiffs cannot pursue a claim of unjust enrichment, because "[t]he doctrine of unjust enrichment does not apply where the parties have entered into a contract." *N. Grp., Inc. v. Tech 4 Kids Inc.*, 352 F. Supp. 3d 882, 887 (E.D. Wis. 2018) (quoting *Cont'l Casualty Co. v. Wis. Patients Comp. Fund*, 164 Wis.2d 110, 118, 473 N.W.2d 584 (1991)).  Ultimately, plaintiffs will need to make a choice as to their theory of the case, but under Federal Rule of Civil Procedure 8(e)(2), plaintiffs may alternatively *plead* breach of an oral or implied contract *and* unjust enrichment claims.  *See Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003) ("[A] party is allowed to plead breach of contract, or if the court finds no contract was formed, to plead for quasi-contractual relief in the alternative.")  Although plaintiffs' unjust enrichment claim would appear to fail were the trier of fact to find that an oral, implied or written contract governs here, nor could plaintiffs recover on both a contract and an unjust enrichment theory, the court will not dismiss plaintiffs' alternate theories at the pleading stage.

*Sixth* and finally, defendant argues that plaintiffs' allegations of fraud and misrepresentation are insufficient to state a claim.  Certainly, a viable claim for intentional misrepresentation under Wisconsin law requires the following allegations:   (1) the defendant made a factual representation; (2) which was untrue; (3) the defendant either made the representation knowing it was untrue or made it recklessly without caring whether it was true or false; (4) the defendant made the representation with the intent to defraud and to induce another to act upon it; and (5) the plaintiffs believed the statement to be true and relied upon it to their detriment.  *Kaloti Enters. v. Kellogg Sales Co.*, 2005 WI

---

court declines to consider that issue.

111, ¶ 12, 283 Wis. 2d 555, 699 N.W.2d 205.  Similarly, under Federal Rule of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting fraud."

Still, plaintiffs' allegations are sufficient to satisfy these standards at the pleading stage.  Among other things, plaintiffs allege that defendant's CEO Constanzo assured Distefano at the outset of their collaboration that: Distefano would maintain the intellectual property rights in the Wellward Platform until transferred to a new joint entity; Nordic would not claim ownership over Wellward; *and* Constanzo had the authority on behalf of Nordic to enter into such an agreement.  Plaintiffs further allege that:  each of these allegations were untrue; Constanzo knew they were untrue; the misrepresentations were made to persuade plaintiffs to work for Nordic; and plaintiffs proceeded to enter into agreements with Nordic to their detriment based on these misrepresentations.

Accordingly, while a question of proof remains, plaintiffs' allegations are sufficient to satisfy the pleading requirements of both Rules 8 and 9, and defendant's motion to dismiss must be denied.

### III.    Plaintiffs' Motion for Leave to File a Second Amended Complaint

As noted, plaintiffs seek leave to amend their complaint to add several, new allegations and legal theories and to name Costanzo personally as a defendant.  Specifically, the proposed second amended complaint includes some *14* claims: copyright infringement (count I); fraudulent misrepresentation (count II); fraudulent inducement (count III); trade secret misappropriation (counts IV and V); conversion (count VI); slander of title

(count VII); tortious interference with business expectancy (count VIII); deceptive trade practices (count IX); breach of oral contract (count X); breach of implied-in-fact contract (count XI); unjust enrichment (count XII); civil conspiracy (count XIII); and declaration of copyright interests (count XIV).

Plaintiffs' motion is governed by Federal Rule of Civil Procedure 15. Under Rule 15, courts shall grant leave to amend when justice requires, but may deny leave when there is a good reason to do so, including undue delay. *See White v. Woods*, 48 F.4th 853, 860 (7th Cir. 2022). Here, plaintiffs do not meaningfully respond to defendant's contention that they could have brought their motion to amend earlier. Indeed, there are no new allegations in their proposed amendments that were not available to plaintiffs when they originally filed their lawsuit. Rather, plaintiffs concede that their proposed amendment is driven by plaintiffs' retention of new counsel and efforts to avoid arbitration and dismissal under Rule 12(b)(6). (Plts.' mtn. (dkt. #57) 1 ("Plaintiffs' amendment seeks to remedy issues raised by defendant Nordic Consulting Partners, Inc. ("Nordic") in its Motion to Compel Arbitration or Alternatively, Dismiss pursuant to Rule 12(b)(6) [by] drop[ping] the claim subject to the pending request for arbitration and assert[ing] more detailed allegations to address the purported factual deficiencies raised in Nordic's motion.")) However, as discussed above, the court is denying defendant's motion to compel arbitration, and plaintiffs' first amended complaint contains sufficient allegations to state claims for relief against defendant. Moreover, although plaintiffs now seek to add new claims against Costanzo, they provide no explanation for waiting so long to do so.

21

Finally, plaintiffs' proposed, second amended complaint includes so many legal theories that their primary theory -- that Distefano, not Nordic, owns the intellectual property rights to the Wellward Platform -- appears lost among all of the duplicative claims. Further, even plaintiffs concede in a more recent filing that their conversion claim is a stretch. (Plts.' Br. (dkt. #68) 15) (agreeing to withdraw conversion claim.)  "[P]leading is not like playing darts: a plaintiff can't keep throwing claims at the board until she gets one that hits the mark." *Doe v. Howe Military School*, 227 F.3d 981, 990 (7th Cir. 2000). Thus, this case will proceed solely on the numerous claims set forth in plaintiffs' first amended complaint, not on even more legal claims that at most unnecessarily complicate and thwart the case's "just, speedy and inexpensive determination."  Fed. R. Civ. P. 1.

ORDER

IT IS ORDERED that:

1) Defendant's motion to compel arbitration or dismiss for failure to state a claim (dkt. #50) is DENIED.

2) Defendant's motion for leave to file a surreply in opposition to plaintiffs' motion to amend their complaint (dkt. #71) is DENIED.

3) Plaintiffs' motion for leave to file a second amended complaint (dkt. #57) is DENIED.

Entered this 2nd day of January, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

22